MILLER v. HUGHES.

1. FINDINGS OF FACT by the Circuit Judge as to fraudulent intent, from testimony reported to him by a referee, approved, not being against the weight of the testimony.

2. ACTION FOR FRAUD—JUDGMENT FOR DEBT.—The testimony not being sufficient to sustain the charge of fraud upon which a creditor sought equitable relief against a sale made by the debtor, the judge erred in dismissing the complaint, without giving plaintiff the opportunity of establishing his debt on the law side of the court.

Before WITHERSPOON, J., Hampton, March, 1892.

This was an action by Theodore K. Miller and others, partners as Daniel Miller & Co., in behalf of themselves and all other creditors of L. F. Hughes, against the said Hughes, Z. Daniels & Co., and others, commenced December 3, 1890, to set aside a sale of stock of goods made by said Hughes. The Circuit decree, omitting its preliminary statement, and, also, the specific findings stated in the opinion of this court, was as follows:

The plaintiffs did not prove their demand before the special referee, as required by the answer of the defendants Z. Daniels & Co., nor does it appear that any other of the creditors of the defendant Hughes proved their claims before the special referee. An oral demurrer was interposed by defendants at the hearing, that the complaint does not state facts sufficient to constitute a cause of action. I do not think that the oral demurrer can be sustained, and it is hereby overruled.

I find, as matter of fact, that the defendants Hughes & Brunson were engaged as partners in mercantile business in the town of Brunson, or Hampton County, for two or three years prior to the year 1889; that said firm was dissolved some time prior to September, 1889, the defendant Brunson taking charge of

the assets of the firm, and continuing in business at Brunson; that about September 1st, 1889, the defendant Hughes purchased on his own account a stock of goods valued at about six thousand dollars, bought on time, and carried on business at the Warren place, some three or four miles from the town of Brunson. That on 12th November, 1889, and before all of the purchase money of his stock of goods had become due, the defendant Hughes was sued for a small amount by Leggette & Co., from whom he had purchased goods; that some time during the early part of the month of November, 1889, the defendant Hughes offered to sell his stock of goods to the defendant Brunson, and the defendant applied to his factors in Augusta, Ga., the defendants Z. Daniels & Co., to borrow $4,500 to purchase said stock of goods; that on the 14th November, 1889, the defendants Z. Daniels & Co. advanced $4,500 in cash to the defendant Hughes, which amount was paid by Brunson to Hughes for the stock of goods; that on said 14th November, 1889, to secure said advance of $4,500, payable February 1, 1890, the defendant Brunson executed to the defendants Z. Daniels & Co. a mortgage of his stock of goods, including the stock purchased from Hughes; that the defendants Z. Daniels & Co. advanced the $4,500 to Brunson in the ordinary course of their business as factors and commission merchants.

The allegation that Hughes obtained credit on the purchase of his stock of goods by misrepresenting his financial standing, is not sustained by the evidence. The evidence is conflicting as to the alleged insolvency of Hughes at the time of the sale of the stock of goods to Brunson. But if Hughes was then insolvent, and intended to defraud his creditors by the sale of his stock of goods, it does not affect the sale and mortgage of the stock of goods, unless it is made to appear that the defendants Brunson and Z. Daniels & Co. had knowledge or reasonable grounds to believe at the time that Hughes was influenced by such fraudulent intent in making the sale of the stock of goods. Fraud is not to be presumed, but may be inferred from circumstances. The circumstances, however, from which fraud may be inferred must appear to be inconsistent with good faith. The sale by Hughes of the stock of goods to his former partner,

Brunson, before the goods had been paid for, and about the time that Hughes had been sued, is calculated to excite suspicion as to the *bona fides* of the transaction, but it does not appear that Brunson then had knowledge either of Hughes' financial condition, or that he had been or was about to be sued. It does not appear that any effort was made to conceal the transaction between Hughes and Brunson, or between Brunson and Z. Daniels & Co.

It is true, that Brunson testifies that he might have got more goods than he paid for—that he thought he was getting a good bargain; but in the absence of any evidence to the contrary, it will be assumed that Brunson paid Hughes a fair price for the stock of goods. The payment of a full price for the goods would not protect Brunson, if he had any knowledge of Hughes' intent to sell the goods to defraud his creditors. I do not think the evidence is sufficient to authorize the inference either that Brunson bought the goods to hinder, delay, or defraud the creditors of Hughes, or that he had any knowledge of such fraudulent intention upon the part of Hughes in selling the stock of goods, if Hughes did intend to defraud his creditors.

I fail to find any evidence to sustain the allegation of the complaint that the defendants Z. Daniels & Co. did not advance the $4,500 to the defendant Brunson, or that they took the mortgage of the goods, and advanced the money to Brunson, with intent to defraud the creditors of Hughes, or that they had any knowledge of such intent upon the part of either the defendants Hughes or Brunson. It appears that the former firm of Hughes & Brunson had considerable dealings with defendants Z. Daniels & Co. as their factors, and that since the dissolution of said firm, the defendant Brunson has continued, and is still, dealing with the firm of Z. Daniels & Co. as his factors. It also appears that the $4,500 was advanced to Brunson by Z. Daniels & Co. in the ordinary course of business; that the $4,500 was counted and paid to Brunson in the presence of witnesses, and that Brunson has since paid Z. Daniels & Co. $1,941.23 of the amount so advanced. The evidence does not show any complicity between the defendants

Hughes and Brunson and Z. Daniels & Co. in the transaction referred to in the complaint.

*Mr. W. S. Tillinghast,* for appellant.

*Mr. I. L. Tobin,* for L. F. Hughes.

*Mr. E. F. Warren,* for Z. Daniels & Co.

March 24, 1893.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This case has been in this court before (see *Miller* v. *Hughes,* 33 S. C., 542, where the character of the action and the allegations of the plaintiffs are fully stated). It seems that the defendant L. F. Hughes was in the mercantile business in Hampton County of this State, and contracted debts *on time* for a large stock of goods; that soon after the goods arrived at his store in Hampton, he sold or transferred them in bulk to one L. F. Brunson, who had been his former partner, for $4,500 in cash, who at once mortgaged the said stock of goods to Z. Daniels & Co., of Augusta, Georgia. This action was commenced by the plaintiffs as one of the creditors of Hughes, to set aside the alleged sale of the goods by Hughes to Brunson, and the mortgage of the same by Brunson to Daniels & Co., as fraudulent and void, as intended by all the parties to defeat, delay, and hinder the plaintiffs and all other creditors of the said Hughes. It seems that the plaintiffs had not established their debt against Hughes by judgment, and obtained a return of *nulla bona* thereon, and upon that ground the Circuit Judge dismissed the complaint because it did not state facts sufficient to constitute a cause of action. The plaintiffs appealed, and this court reversed the judgment, holding, that "in an action by a creditor to set aside transactions alleged to have been made by the debtor for the express purpose of defrauding his creditors, it is not necessary to allege that the plaintiff has recovered judgment upon his demand and obtained a return of *nulla bona;*" and, therefore, the demurrer should have been overruled, and the defendants allowed proper time to answer.

The case went back to the Circuit, the defendants were al-

lowed to answer, the testimony was taken by a special referee, which is printed in the record, and the cause was heard on its merits by Judge Witherspoon. Another oral demurrer was interposed, on the ground that the complaint did not state facts sufficient to constitute a cause of action, which was overruled. The judge then proceeded to render his decree upon the pleadings and evidence. He stated, among other things, that neither the plaintiffs nor any of the creditors of Hughes had taken judgment for their demands, or established them before the referee; that the testimony was conflicting as to the alleged insolvency of the debtor Hughes at the time of the sale or transfer of the stock of goods to Brunson, and found as follows: As matters of fact, "I. That the evidence fails to sustain the allegations of the complaint, that the defendant L. F. Brunson, in purchasing the stock of goods from the defendant L. F. Hughes, *intended* to hinder, delay, or defraud the creditors of defendant L. F. Hughes. II. That the evidence also fails to sustain the allegations of the complaint, that the defendants Z. Daniels & Co. advanced money to defendant L. F. Brunson and took a mortgage of the stock of goods, with intent to hinder, delay, or defraud the creditors of the defendant L. F. Hughes. I conclude, as matter of law, that the plaintiffs are not entitled to the relief demanded in the complaint. It is, therefore, ordered and adjudged, that the plaintiffs' complaint be dismissed," &c.

From this decree the plaintiffs appeal upon the following grounds: I. That his honor erred in holding that this is an action solely to set aside the sale of Hughes to Brunson, and the mortgage from Brunson to Daniels & Co., thus ignoring the indebtedness of Hughes to plaintiffs, which is admitted in Hughes' answer. II. That his honor erred in holding that there is no evidence to impeach the transaction between Hughes and Brunson. III. That his honor erred in holding that Brunson and Daniels & Co. must have had knowledge, or reasonable ground to believe, that Hughes intended fraud, thereby excluding from consideration "circumstances sufficient to put a party on inquiry." IV. That his honor overlooked the fact, that Brunson, by reason of his position, shown by the evidence, was

enabled to consummate this bargain clearly for the benefit of
Hughes as well as himself. V. That his honor erred in holding,
that Daniels & Co. had no knowledge, or reasonable ground to
believe, intended fraud of Hughes, and ignoring the doctrine
of "circumstances sufficient to put them on an inquiry." VI.
That his honor erred in holding throughout his decree, in tenor
and effect, that plaintiffs must prove complicity, indirectness,
and fraud by positive evidence. VII. That his findings of fact
are contrary to the manifest weight of the evidence. VIII.
That his honor erred in failing to give consideration to the
admissions and inconsistencies in the answers. IX. That his
honor erred in holding, that the old stock of Hughes & Brun-
son was the property of Brunson that he could mortgage. X.
That his honor erred in dismissing plaintiffs' complaint, and
thereby debarring plaintiffs of the right of submitting, on the
law side of the court, the question of the indebtedness of Hughes
to plaintiffs.

It will be observed that all the grounds of appeal, except the
first and the last, complain of error in the findings of facts.

1    The Circuit Judge found that the evidence did not sus-
tain the allegation that Brunson had any fraudulent
intent in purchasing the stock of goods from Hughes, or
that Daniels & Co. had any such intent, in lending the money
to Brunson to enable him to make the purchase, and to take a
mortgage of the same to secure themselves. We have read the
testimony carefully, and while the circumstances might raise a
suspicion as to the purpose of Hughes, in purchasing goods *on
time,* and immediately thereafter selling them *in bulk for cash,*
we can not say that the findings of the judge were against the
weight of the evidence.

The first and last exceptions complain that the judge com-
mitted error in holding substantially, that the only purpose of

2    the action was to set aside the sale of Hughes to Brun-
son, and the mortgage of Brunson to Daniels & Co.; and
in dismissing the complaint as to all the defendants,
including Hughes, the alleged debtor. It seems that the plain-
tiffs did not establish their claim as creditors, either before the
master or recover judgment thereon; and we do not clearly see

how they could ask the relief of equity, until they had shown that they were, in fact, creditors, and the alleged fraudulent sale impaired or destroyed their rights as such.   As was said by the Chief Justice in the first opinion in this case before referred to (33 S. C., page 541): "Of course, the mere fact that his debtor has perpetrated a fraud, even of the grossest character, gives him no cause of action; but when he alleges other facts tending to show that his rights are injuriously affected by such fraud, then he states a complete cause of action, *which, if established, will entitle him to relief*," &c.   It appears that only the claim *for equitable relief* was considered, leaving untouched the demand for judgment on the law side of the court *against Hughes* as debtor of the plaintiffs.

The judgment of this court is, that the judgment of the Circuit Court be reversed, in so far as it dismissed the complaint as to the alleged *debtor, L. F. Hughes;* and that in all other respects it be affirmed.